IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-00031-WDM-MEH

JANET BOESER and
CHERYL FOOTE,

    Plaintiffs,

v.

ANTHONY D. SHARP;
AD SHARP US, INC.;
VALDORO DEVELOPMENT COMPANY, LLC;
VALDORO SALES & MARKETING, LLC; and
STEVE LUNNEY,

    Defendants.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Miller, J.

This matter is before me on the motion for partial summary judgment filed by defendants Anthony D. Sharp, AD Sharp US, Inc., Valdoro Development Company, LLC, Valdoro Sales and Marketing, LLC, and Steve Lunney.[1] Plaintiffs Janet Boeser and Cheryl Foote oppose the motion. I have reviewed the parties' written arguments and tendered evidence and conclude that oral argument is not required. For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] Except where distinction is necessary, defendants Valdoro Development, LLC, and Valdoro Sales & Marketing, LLC are referred to collectively as "Valdoro."

Background[2]

Plaintiffs are former sales executives for Valdoro who sold fractional ownership interests in the Valdoro Mountain Lodge, a vacation ownership property in Breckenridge, Colorado, owned by Valdoro Development Company. Defendant Sharp is the president of AD Sharp US, Inc., which is the managing member of Valdoro Development. Defendant Steve Lunney is a senior vice president of Valdoro.

In September 2000, Barry Bridges, a senior sales manager for Valdoro Sales & Marketing, LLC, recruited Boeser and Foote to sell ownership interests in the Lodge, which was then under development. Plaintiffs allege that Bridges made certain representations to them at the time of recruitment regarding the timing of the development project and the amounts they could expect to earn per year in commissions. Before accepting positions with Valdoro, Boeser was working at a Sheraton resort in Vail, and Foote was employed by Ramada in Steamboat Springs. Plaintiffs left their places of employment to work for Valdoro; Foote's change of employment necessitated a move to Breckenridge, where she bought a condominium.

Plaintiffs began work with Valdoro in November 2000. During their initial two-week training session, they each signed Independent Contractor Agreements with Valdoro. The

---

[2] Unless otherwise noted, the following facts appear to be undisputed. Because Defendants do not provide much background information regarding the parties in their Statement of Undisputed Material Facts, I have drawn some of this information from the Amended Complaint. I note that Defendants include a "Background" section in their opening brief, containing additional facts and record citations (and duplicating many of the allegedly undisputed facts). There is no explanation for why these additional facts were not included in the Statement of Undisputed Material Facts. Plaintiffs do not respond to the Background section.

parties dispute whether Plaintiffs were employees or independent contractors. Defendants leave this issue to be resolved at trial.[3]

In February 2001, Ramin Samierad was promoted to senior sales manager. Prior to this promotion, Lunney learned that allegations of sexual harassment had been lodged against Samierad at his prior workplace. Lunney contacted both Samierad and an officer of his prior employer and concluded the allegations were unfounded. Plaintiffs appear to dispute the validity of this conclusion.

In 2001, Valdoro announced an incentive for its sales executives, offering a bonus of half a percent of its total sales volume for 2001 to be shared among the top four sales executives. The bonus contest was year-long, ending in December 2001. In June, Foote began maternity leave. While she was on leave, Valdoro changed the bonus contest to award the top sales executive with a BMW (or the cash equivalent), leaving the second, third, and fourth places sales executives to share any remaining amount of the half of a percent of the 2001 sales volume. Boeser informed Foote that the bonus structure had changed.

In September, Foote returned from maternity leave, working a reduced schedule. Valdoro terminated her position with it on November 29, 2001. The parties dispute the reasons for the termination.

The parties do not address the circumstances of Boeser's tenure with Valdoro or

---

[3] Although there appear to be factual disputes regarding Plaintiffs' employment status, I note there are awkward results of the inability to resolve the issue before trial. For instance, several of the claims asserted, including the Title VII claims upon which this court's subject matter jurisdiction is premised, apply only if Plaintiffs were employees, not independent contractors, of Valdoro.

her termination in March 2002, as Defendants do not move for summary judgment on her separate claim for sexual harassment.

The Amended Complaint, filed in state court and removed by Defendants, asserts the following claims by both Plaintiffs: (1) negligent misrepresentation by Valdoro (First Claim); (2) fraud committed by Valdoro (Second Claim); (3) violation of C.R.S. § 8-2-104 by Valdoro (Third Claim); (4) promissory estoppel against Valdoro (Fourth Claim); (5) retaliation by Valdoro in violation of the Colorado Anti-Discrimination Act and Title VII (Claim Nine); (6) breach of implied contract by Valdoro (Tenth Claim); (7) breach of contract by Valdoro Sales & Marketing, LLC (Eleventh Claim); (8) negligent hiring, promotion, supervision, and training by all defendants (Twelfth Claim); and (9) for a declaratory judgment regarding enforceability of Independent Contractor Agreements (Thirteenth Claim). In addition to these joint claims, Foote asserts that all defendants violated C.R.S. § 8-4-120 (Fifth Claim) and that Valdoro wrongfully discharged her in violation of public policy (Sixth Claim) and discriminated against her on the basis of her pregnancy and gender, in violation of federal and state law (Seventh Claim). Boeser brings a claim against Valdoro for sexual harassment in violation of Title VII and Colorado law (Eighth Claim).

The status of AD Sharp US, Inc. as a defendant is not clear from the current record. The company is listed as a defendant in Claim Five (violation of § 8-4-120, asserted by Foote) and Claim Twelve (negligent hiring, etc., asserted by both Plaintiffs) of the Amended Complaint, but the Pretrial Order omits the company as a defendant entirely, not even listing it in the caption. The Pretrial Order mentions that Boeser voluntarily agreed

to dismiss AD Sharp US but is silent as to Foote's claims, and there is no Fed. R. Civ. P. 41 motion making any dismissal formal.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

Defendants move for summary judgment on all claims except for Boeser's claim for sexual harassment and the claim for declaratory relief. I address the challenged claims in the order presented in Defendants' opening brief.

1.  Negligent/Fraudulent Misrepresentation Claims

To prove their claim for negligent misrepresentation, Plaintiffs must show that Valdoro, in the course of its business, supplied false information to them to guide them in their business transactions, that Valdoro failed to exercise reasonable care or competence

in obtaining or communicating the information, and that they justifiably relied on that information. *Fluid Tech., Inc. v. CVJ Axles, Inc.*, 964 P.2d 614, 616 (Colo. App. 1998). The elements of fraudulent misrepresentation are similar: (1) a knowing misrepresentation of material fact, (2) reliance on the material misrepresentation, (3) the plaintiff's right or justification in relying on the misrepresentation, and (4) reliance resulting in damages. *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003).

Defendants argue the alleged misrepresentations concerning the development time of the Lodge and the amounts of compensation available are not actionable because they were predictions of future events and there is no evidence that Valdoro did not believe the statements when made.

In general, a claim of fraud "requires more than the mere nonperformance of a promise or the failure to fulfill an agreement to do something at a future time." *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo. App. 2005). If, however, the speaker "deliberately falsified his or her intention to induce reliance," a statement of future events may generate a claim for fraud.[4]  *Id.  See Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995)

---

[4]  Plaintiffs argue Valdoro's statements about future events may be false representations if the person making the statements had "special knowledge." They cite Colorado Jury Instruction § 19:13. The commentary to this instruction does not cite any Colorado authority for this assertion, and the only case I have found is an unpublished opinion by the Colorado District Court that, in turn, cites no authority. *See RHC, LLC v. Quizno's Franchising, LLC* No. 04CV985 (Colo. Dist. Ct. July 19, 2005) (2005 WL 1799536) (statement of future event may be actionable if "person making the statement claimed to have special knowledge to support the statement that he or she did not have or had special knowledge that he or she failed to disclose and which he or she knew would make the future event unlikely to happen"). Because there is no indication the Colorado Supreme Court would adopt this reasoning, I decline to apply it here.

("A claim for fraud may be premised upon one party's 'promise concerning a future act . . . coupled with a present intention not to fulfill the promise'") (citation omitted).

Plaintiffs present some evidence that Bridges was aware the sell-out prediction for the Lodge was five years but informed them at the time of recruitment that the sell-out would be two and a half years. This evidence creates a factual issue regarding whether Bridges intended to induce Plaintiffs' reliance on a false prediction of the rate of sales, a factor in their compensation. Accordingly, summary judgment is not proper on these claims.

2.   Colorado Labor Relations Claim

Plaintiffs allege Valdoro violated C.R.S. § 8-2-104 by inducing them to change from one place of employment to another by means of false or deceptive representations. This statute provides, in relevant part:

> It is unlawful for any person, company, corporation, society, association, or organization of any kind doing business in this state . . . to induce, influence, persuade, or engage workmen to change from one place of employment to another in this state, or to bring workmen of any class or calling into this state to work in any of the departments of labor in this state, through or by means of false or deceptive representations, false advertising, or false pretenses concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work[.]

When recruited by Valdoro, Boeser was working in Vail, Colorado, and Foote in Steamboat Springs, Colorado. Both left their former employment to work for Valdoro, and Foote purchased a condo in Breckenridge.

Defendants argue the claim must fail because the statute applies only to cases in which an employer brings workers into Colorado from another state. They rely on *Vaske*

*v. DuCharme, McMillen & Assocs., Inc.*, 757 F. Supp. 1158, 1164 (D. Colo. 1990), which held exactly that, dismissing a claim brought by an employee who had moved places of employment within Colorado.

Contrary to Defendants' arguments in their reply brief, I am not bound to follow the *Vaske* decision. Indeed, given the express statutory language in § 8-2-104 and § 8-2-106, I cannot agree that the statutory claims are limited to interstate, as opposed to intrastate, activity. Section 8-2-104 prohibits fraudulent inducement of workers "to change from one place of employment to another *in this state*." (Emphasis added). Section 8-2-106 states that "Section[ ] 8-2-104 . . . shall be construed only to apply in cases where workmen are brought into this state, *or induced to go from one place to another in this state* by any false pretenses, false advertising, or deceptive representations[.]" (Emphasis added). Nor do I agree that the Colorado legislature's failure to "clarify" what appears to be unambiguous statutory language in the wake of *Vaske* should be taken to mean that the interpretation in that case is the correct one. Accordingly, I conclude Plaintiffs may bring claims under § 8-2-104 based on their changes of employment within the State of Colorado.

In their reply brief, Defendants argue for the first time that the claim may be dismissed because, based on the arguments discussed above, there was no false or deceptive representation. As I have found factual issues preclude summary judgment on the issue of misrepresentation, this argument fails as well.

3.   <u>Promissory Estoppel Claim</u>

To prevail on their promissory estoppel claim, Plaintiffs must establish: (1) Valdoro made a promise to them;(2) Valdoro should reasonably have expected that promise would

8

induce action or forbearance by them; (3) they in fact reasonably relied on the promise to their detriment; and (4) the promise must be enforced to prevent injustice. *Berg v. State Bd. of Agriculture*, 919 P.2d 254, 259 (Colo. 1996).

Defendants assert the claim must be dismissed because the Independent Contractor Agreements supersede any alleged promises made to Plaintiffs regarding their expected earnings. Because the validity of the agreements and the issue of justifiable reliance are disputed issues, summary judgment is not appropriate on this claim.

4.   Retaliatory Discharge Claim Under Wage Claim Act

C.R.S. § 8-4-120 (previously § 8-4-124) provides, in pertinent part: "No employer shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law[.]"[5]

Defendants assert this claim must be dismissed because Foote never filed a formal complaint or instituted a proceeding challenging the change in the 2001 bonus contest. In their reply brief, they contend Foote did not suggest to anyone that the change in the bonus contest violated the Colorado Wage Claim Act or was otherwise illegal. Defendants cite no Colorado cases construing § 8-4-120.

As Foote asserts in response, courts interpreting virtually identical language in the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), have not read the filing and instituting requirements literally but have found "even the 'unofficial assertion of rights through

---

[5] According to its express terms, a violation of section 8-4-120 is a misdemeanor punishable by a fine and/or imprisonment. Defendants do not argue that there is no private right of action under this section.

9

complaints at work'" to be protected. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394 (10th Cir. 1997). I adopt this construction and, as a result, will deny summary judgment on this claim.

5.    <u>Wrongful Discharge in Violation of Public Policy</u>

Foote alleges in the Amended Complaint that Valdoro discharged her in retaliation for complaining about the change in the 2001 sales bonus and her statutory right to receive the compensation she was due. She relies on the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.*

Colorado law recognizes a public policy exception to an employer's right to fire an at-will employee. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). Although generally addressed under circumstances where an employer directs an employee to perform an illegal act as part of his or her work-related duties, the claim may also encompass a situation where an employee is discharged for exercising a specific statutory right or performing a specific statutory duty. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992) (setting forth first element of claim to include that employer directed employee to perform an illegal act as part of his or her work-related duties or prohibited him or her from performing a public duty or exercising an important job-related right or privilege).

Colorado's standard jury instructions set forth three elements for this type of claim: (1) the plaintiff was employed by defendant; (2) the defendant discharged plaintiff; and (3) the defendant discharged the plaintiff because the plaintiff exercised a specific statutory right or performed a specific statutory duty. *See* C.J.I. 4th, § 31:12.

10

Defendants contend Foote cannot establish that she exercised a specific statutory right by complaining about the change in the 2001 bonus contest because the wage statute only applies to wages and compensation that are "earned" and she had no right to recover a year-end bonus.[6]  They also argue Foote's claim is not actionable because it does not impact the public.  *Hoyt v. Target Stores*, 981 P.2d 188, 191 (Colo. App. 1998).

Foote, in turn, asserts that she was terminated for exercising what she reasonably believed to be her statutory right to complain about her wages.  *See Love v. Re/Max of American, Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) (interpreting 29 U.S.C. § 215(a)(3) to protect "conduct based no a good faith, although unproven, belief that the employer's conduct is illegal").  This right to complain is deemed important enough that the violation thereof results in criminal penalties.  *See supra* note 4.

I conclude Defendants have not met their summary judgment burden on this claim.

6.   Gender/Pregnancy Discrimination Claim

In her response to the motion for summary judgment, Foote concedes that her claim for discrimination based on her pregnancy should be dismissed.  She continues to pursue her gender discrimination claim based on statements made to her by Samierad at the time of her termination.  Foote alleges that Samierad told her she would be better off if she stayed home and took care of her son and that she was fired because she was not

---

[6]     There is authority holding that a claim of wrongful discharge is not available where a statute, such as Title VII, provides the employee with a remedy.  *See, e.g., Caspar v. Lucent Technologies, Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003).  Defendants do not rely on this theory, and, indeed, argue Foote would not have a claim under the Wage Act because she did not earn the bonus.  Thus, it is not clear whether any statute provides a remedy foreclosing a claim of wrongful discharge.

sufficiently committed to Valdoro because she was working a reduced schedule so she could care for her son. Samierad apparently also complained to others about Foote's using a breast pump at work.

Foote argues the comments that she should stay home with her son are direct evidence of gender discrimination. She relies on *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999), and *Neis v. Fresenius USA, Inc.*, 219 F. Supp. 2d 799 (E.D. Mich. 2002). Although both cases support her argument, I decline to follow them.

Title VII prohibits discrimination based on gender, not on one's status as a parent. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. at 25 (Ginsburg, J., concurring)). Because actions taken as a result of one's status as a parent are not gender-specific, it follows that employment decisions based on those actions or requirements are not based on gender. *Cf. Piantanida v. Wyman Center, Inc.*, 116 F.3d 340, 342 (8th Cir. 1997) ("While the class of new parents of course includes women who give birth to children, it also includes . . . men who become fathers through either adoption or biology"); *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487, 1492 (D. Colo. 1997) ("[h]owever logical it may be to argue . . . that parental leave following maternity leave is gender-based and thus protected under Title VII, that proposition has been consistently rejected from the outset") (citation omitted).

I agree with Defendants that Foote cannot establish a claim of gender discrimination based on the alleged statements regarding her need to care for her son. Summary

judgment is proper on this claim.

7.   Retaliation Claim

Plaintiffs' retaliation claim is based on a letter sent by Defendants' attorney in conjunction with the Colorado Civil Rights Division complaint threatening to seek attorneys' fees against Plaintiffs related to the CCRD complaint.  Boeser agrees to dismiss her retaliation claim to the extent it is based on derogatory comments made by Valdoro to prospective employers.

A *prima facie* case of retaliation requires that Plaintiffs prove: (1) they took action opposing Title VII discrimination; (2) Valdoro took an adverse employment action subsequent to or contemporaneous with such activity; and (3) a causal connection between the activity and the adverse action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996).  The parties focus on the second element, disputing whether the threat to seek attorneys' fees is an adverse employment action.

Plaintiffs argue in a conclusory manner that the threat to seek for attorneys' fees was an adverse employment action "because it was related to Plaintiffs' employment relationship with Valdoro since the threat resulted form the charges of discrimination which addressed how Valdoro treated them as employees of Valdoro."  Response Brief, at 35. Although the Tenth Circuit liberally construes adverse employment action, Plaintiff's construction ignores the requirement that the adverse action have some impact on their employment status.  *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998). Relying on a decision by the Third Circuit, the Tenth Circuit explained: "Retaliatory conduct other an discharge or refusal to rehire is thus proscribed by Title VII only if it alters

13

the employee's 'compensation, terms, conditions, or privileges of employment' or 'adversely affect[s] his [or her] status as an employee.'" *Id.* (citation omitted; alterations in quoted material).

I agree with Defendants that summary judgment is proper on the Plaintiffs' retaliation claim because the attorneys' fees letter was not an adverse employment action.

8.      Breach of Contract and Breach of Implied Contract Claims

To prevail on their claim for breach of implied contract, Plaintiffs must first show the existence of a contract with Valdoro. *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 827 (Colo. App. 1990) ("liability for breach of contract exists only if the [plaintiff] can prove all the elements of the formation and breach of a contract"). A contract may be implied in fact where the conduct of the parties evidences a mutual intention to contract with each other. *Id.*, at 829. The essential elements of a contract are "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligations." *Denver Truck Exch. v. Perryman*, 307 P.2d 805, 810 (Colo. 1957).

The breach of implied contract claim is based on Plaintiffs' allegation that Valdoro breached its Policies & Procedures regarding the "zero tolerance" of sexual harassment.[7] Defendants argue any reliance on the Policies & Procedures is precluded by a disclaimer in the Independent Contractor Agreements that provided the "practices and procedures" were advisory. Plaintiffs respond that the disclaimer was inconspicuous.

Although Defendants do not focus on this in their motion, I observe that the

---

[7]     To the extent the claim is based on written policies and procedures, the claim is not really one for *implied* contract.

14

language in the Policies and Procedures, attached as Exhibit B to the Amended Complaint, is too vague to constitute an actionable promise. *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997). In addition, I note that an employer's promise to prohibit unlawful conduct is illusory because the employer is required to follow the law whether it promises to do so or not.

Because the implied contract claim is based on the Policies & Procedures, summary judgment is proper for Defendants on this claim.

With regard to the claim for breach of contract, Plaintiffs assert Valdoro failed to give them fourteen days written notice before terminating them as required by the Independent Contractor Agreements. Defendants assert summary judgment is proper because any damages for such a breach would be limited to commissions Plaintiffs could have earned during those two weeks. Plaintiffs dispute the amount of damages recoverable.

Because Defendants do not dispute that Valdoro may have been required to give prior written notice, I will deny summary judgment on this claim.

9.      Negligent Hiring, Promotion, Supervision, and Training Claim

Plaintiffs' Twelfth Claim asserts that all defendants were negligent in hiring, promoting, supervising, and training Samierad.

Defendants contend their investigation of the prior allegations of sexual harassment against Samierad was sufficient to discharge any reasonable duty of investigation. They do not, however, provide any discussion of the scope of that duty by which I might conclude they are entitled to judgment as a matter of law. In addition, they fail completely

to address the claim of negligent supervision.  Summary judgment is not proper on these claims.

Accordingly, it is ordered:

1. The Defendants' motion for partial summary judgment, filed March 22, 2004, is granted in part to dismiss Foote's pregnancy and gender discrimination claims, Plaintiffs' retaliation claim, and the claim for breach of implied contract.  The balance of the motion is denied.

2. This case remains pending for trial on the claims for negligent misrepresentation, fraud, violation of C.R.S. § 8-2-104, promissory estoppel, violation of C.R.S. § 8-4-120, wrongful discharge in violation of public policy, sexual harassment (Boeser), breach of contract, and negligent hiring, promotion, supervision, and training.

DATED at Denver, Colorado, on March 31, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge